W. H. RANDOLPH AND WIFE V. JOHN JUNKER ET AL.

No. 42.

**1. Notice that Land is Community Property.**—The survey granted to Mumford House, being one league and one labor of land, was sufficient to put vendees of House on notice of the equitable rights of the plaintiff in the land. Such a grant could only be made to the head of a family, and that implies marriage and a wife.

**2. Evidence to Show Settlement with Heir of Deceased Parent.** This suit was by the daughter of House by a deceased wife.  House had sold the community land in controversy, after the death of his wife, and without administration upon her estate.  To prove a settlement by the father with the daughter, defendants were properly allowed to show the chain of title to a tract of land in

Ellis County to the father, and deed from the father to the daughter, after the death of his wife, to 200 acres of that land, and sale of the 200 acres of land by the daughter and her husband to a third party. The deed from the father to the daughter recited, " it being her distributive share of my estate."

3. Sale of Community by Survivor.—The daughter owned an equitable interest in the land, of which the father held the legal title for himself and the heirs of his deceased wife, subject to community obligations. In such case, the survivor may sell the property for the purpose of discharging community debts: but if he sells without authority, the heirs of the deceased parent would be entitled to recover one-half, less the value of such property as they had received from the surviving parent. The conveyance to the daughter in this case must be held to be prima facie in discharge of such obligation.

4. Heirs of Deceased Parent, how Concluded.—Though defendants bought with notice of the daughter's equitable interest as heir of her mother, she will not be permitted to retain the proceeds of the settlement for that interest, and recover the same of defendants, without restoring such proceeds. Although her interest in the De Witt County lands may not have been conveyed in the manner prescribed by statute for the conveyance by married women, our decisions are to the effect, that when heirs receive property amounting to their share of the community, their equitable title to the remainder is discharged.

5. Deed without Warranty Passes After-acquired Title.—A deed with restrictive warranty against all persons claiming under the grantor, will convey after-acquired title.

Appeal from De Witt.    Tried below before Hon. H. Clay Pleasants.

*Proctor & Proctor*, for appellants.—1. The court erred in holding defendants to be bona fide purchasers without notice, since the patent to Mumford House for such quantity of land as a league and labor put defendants, as reasonably prudent men, upon such inquiry as would have advised them of plaintiff Shela Randolph's title. Edwards v. Brown, 68 Texas, 332; Hill v. Moore, 62 Texas, 614; Const. 1836, sec. 10, Gen. Prov.; Pasch. Dig., arts. 4140, 4149, 4158, 4159; Republic v. Skidmore, 2 Texas, 265; Slayton v. Singleton, 72 Texas, 212; Laws. on Pres. Ev., 198; 2 Dev. on Deeds, secs. 1000–1005; 2 Pome. Eq. Jur., secs. 626, 628; 23 Am. Dec., 48–51; 16 Am. Dec., 754, 755.

2. The defense of appellees, that Shela Randolph received the Ellis County land in settlement of her interest in her mother's estate, was a defense directly attacking the purpose of M. House's deed to Shela Randolph, as expressed in said deed. The particular recital, "it being her distributive share of my real estate," was a recital showing the purpose of said deed, and as such recital was conclusive upon appellees. 2 Dev. on Deeds, secs. 992–997; Stowe v. Wyse, 18 Am. Dec., 102; 2 Stark. on Ev., 30; 1 Greenl. Ev., 22–24; 1 Phill. Ev., 410; Huntington v. Hawes, 5 Johns. Ch., 26; 1 Stark. Ev., 305; Rich v. Atwater, 16 Conn., 415; Williams v. Robinson, 16 Conn., 524; Fairtitle d'Mytton v. Gilbert, 2 T. R., 169–179; Palmer v. Elkins, 2 Stra., 1817.

3. Such a warranty as in this deed, restricted as same was to persons

claiming by or through Mumford House, would not pass to appellees even a title subsequently acquired from a stranger by Mumford House; a fortiori, same would not pass such an equity as Mumford House acquired from Shela Randolph by virtue of such settlement. Rawle on Cov. for Title, 2 ed., 417–419; 2 Dev. on Deeds, 947; Comstock v. Smith, 23 Am. Dec., 671, 672; Miller v. Ewing, 6 Cush., 40; Doane v. Willcult, 6 Gray, 333; Ellis v. Welch, 6 Mass., 250; Tillottson v. Kennedy, 39 Am. Dec., 334; Upshaw v. McBride, 10 B. Mon., 203; 2 Pome. Eq. Jur., secs. 801, 257; Wright v. Doherty, 50 Texas, 41; 3 Washb. Real Prop., 96.

*Rudolph Kleberg, R. A. Pleasants, O. L. Crouch,* and *Fly & Davidson,* for appellees.—1. There was nothing apparent from the face of the patent to put defendants upon notice that Mumford House was the head of a family and that the land described in the patent was community property. Hill v. Moore, 62 Texas, 610; Wren v. Peel, 64 Texas, 374; Edwards v. Brown, 68 Texas, 329; Pouncy v. May, 76 Texas, 565; Patty v. Middleton, 82 Texas, 586.

2. The deed from Mumford House to Shela Randolph, conveying 200 acres of land, and using the expression, "it being her distributive share of my real estate," must be construed to mean really plaintiff's distributive share in her mother's estate. Howard v. Davis, 6 Texas, 174; Hicks v. Morris, 57 Texas, 661; Greenl. Ev., sec. 285; Burleson v. Burleson, 28 Texas, 383; Walker v. Howard, 34 Texas, 513; Magee v. Rice, 37 Texas, 483; Wright v. Doherty, 50 Texas, 34.

GARRETT, Chief Justice.—Action of trespass to try title to recover an undivided interest of five-twenty-fourths in the south half of the Mumford House league and labor of land, situated in De Witt County, Texas, brought by appellant Shela Randolph, joined by her husband, W. H. Randolph. Plaintiffs claim the land in the separate right of Mrs. Randolph to one-sixth thereof as the heir of her mother, Matilda House, the deceased wife of Mumford House, and one-twenty-fourth thereof as the heir of her deceased brother, Travis House.

Defendants claim title to the land under a deed of conveyance from Mumford House to W. R. Baker, made after the death of Matilda House, and say that they had no knowledge of Mrs. House or the plaintiffs, or that they had any interest in the land. Also, that after his conveyance to Baker, Mumford House settled with his daughter, Shela Randolph, for her mother's interest in the land in controversy, by conveyance to her of other real and personal property.

The case was tried by the court without a jury, and judgment was rendered for the defendants. No conclusions of fact and of law were filed by the court below.

1. Mumford House and Matilda McCurly were married prior to 1836,

and lived together as husband and wife until 1847, when the wife died. She left as her sole heirs the three children of herself and her said husband, to-wit, Joe M., Travis, and Shela. Travis died without issue, intestate, in the year 1861. Shela married plaintiff W. H. Randolph in January, 1857. Mumford House married again, and died in 1882, leaving children by his second wife.

2. The land in controversy is an undivided interest of five-twenty-fourths in the south or lower half of one league and one labor, situated in De Witt County, Texas, patented to Mumford House, his heirs and assigns, on December 8, 1847. The patent contains no mention of the certificate and no recital that it was issued to House as the head of a family. A certificate was issued to House as the head of a family for one league and one labor of land, dated March 2, 1838, by the Board of Land Commissioners of Harris County; and on October 9, 1845, a duplicate certificate was issued to him on proof of loss of the certificate issued March 2, 1838.

3. January 17, 1846, Mumford House made a contract in writing with John York to "clear out" his "headright league and labor" on halves, and to receive a patent from the Land Office for the same. Said contract was recorded in the record of deeds for De Witt County, July 24, 1854.

4. December 24, 1854, Mumford House executed power of attorney to R. House to convey one-half of the league and labor to York's heirs. The instrument recited, "that whereas John York in his lifetime did locate in De Witt County for me one league and labor of land, to which I was entitled as a colonist under the Mexican Government," and proceeded to authorize the conveyance. It was recorded in the record of deeds for De Witt County, June 2, 1855.

5. Mumford House, by his attorney in fact, R. House, conveyed by metes and bounds one-half of said league and labor to the heirs of John York, which, though not designated as such, was the upper or north half. This deed is dated January 11, 1855, and was recorded in the record of deeds for De Witt County on June 2, 1855. It contained the following recital: "Containing one-half of the survey of one league and labor patented to me as a colonist under the Mexican Government."

6. On June 30, 1857, Mumford House conveyed to W. R. Baker, for consideration of $5000 cash, as expressed in deed, but an actual consideration of land in Ellis County exchanged therefor, one-half of the following described league and labor of land: "Being the south or lower half, and the half not heretofore conveyed to one York, situated on the back lines of the surveys on the Guadalupe, about 23 miles northwest of Victoria, and granted to Mumford House by patent No. 177, volume 7, dated December, A. D. 1847, said land lying on Five Mile Creek; and for a more full description said patent is made a part of this deed." There is no covenant of seisin contained in the deed, and the warranty is limited to

those claiming "by or through" the grantor, being a special warranty deed.    It was recorded in De Witt County, November 14, 1873; but the record is only partial, there being some portions of the deed omitted. No authority in House to sell his wife's community interest after her death was shown by proof of administration or of community debts.

7. On October 29, 1873, W. R. Baker conveyed to D. B. Peavy as follows: "The south or lower half, and the half not sold by Mumford House to one York, of one league and labor of land granted by the State of Texas to Mumford House by patent No. 177, volume 7, dated December 8, 1847, and conveyed by M. House to Baker by deed dated June 30, 1857, which deed and patent are herewith delivered and made part of this deed, and reference is made to them for full description." This deed was duly recorded November 14, 1873.

8. Defendants Junker and others bought their respective tracts from Peavy at various dates subsequent to his purchase from Baker.

9. When Baker bought the land from House he did not know whether House was a married man, or the head of a family, or not, and had no knowledge of his having had a wife who was dead, nor of any children by such wife.    Nor did Peavy nor any of the defendants ever have knowledge that Mumford House was or had been a married man, or the head of a family, or that his wife was dead, or of the existence of the plaintiff, until the institution of this suit.

10. In the year 1861, Mumford House gave his three children by the said Matilda each 200 acres of land out of the land in Ellis County which he received from W. R. Baker in exchange for the land in controvery, also 100 head of cattle, 25 head of horses, and to Mrs. Randolph a negro boy, which he considered equal to their interest in the De Witt County land, in settlement of said interest; but the deed to Mrs. Randolph was not executed until 1870, on account of the pendency of some legal proceedings about the Ellis County land.    Afterward Mrs. Randolph, joined by her husband, sold and conveyed the 200 acres that she received to one W. C. Stalworth.

11. The deed from Mumford House to Mrs. Randolph for the land conveyed to her recited that it was in consideration of love for his daughter, and concluded with the recital, "it being her distributive share of my real estate."    Mrs. Randolph never executed any deed or release to her father, nor to any one else, for any interest to the land in controversy, in consideration of such settlement, nor for any other consideration.

1. We find, upon the authority of Hill v. Moore, 62 Texas, 610, that the size of the survey granted to Mumford House, being one league and labor, was sufficient to put the vendees of said House upon notice of the equitable rights of the wife of said House in the land, because a league and labor of land could only be granted to the head of a family, and the head of a family implied marriage and a wife.    This being true, the de-

fendants would have to take notice of every other fact necessary to protect the interest of Mrs. Randolph, as the death of her mother, and her consequent heirship.

It will not be necessary to inquire whether the defendants would be bound by the recitals in the deeds and other instruments in the York title, as we have held that the size of the grant itself is sufficient to give notice of the equitable interest of Mrs. Randolph in the land. Although these instruments were collateral to the chain of title under which the appellants claimed, it was contended by them that the recital in the deed to W. R. Baker by Mumford House, that he conveyed the "half not heretofore conveyed to one York," and did not convey by metes and bounds, while the York deed was by metes and bounds, directed the defendants to the deed to York, which would have shown that the land was patented to House as a colonist.

2. For the purpose of showing a settlement by Mumford House with the plaintiff Mrs. Randolph, for her interest in her mother's estate, defendants were permitted to put in evidence a deed to M. and W. R. House for the land in Ellis County; the petition in partition suit of House v. Beauchamp, administrator of W. R. House; deed from M. House to Shela Randolph; deed from Shela Randolph and husband, W. H. Randolph, to N. C. Stalworth; and the testimony of Jo. M. House and W. A. House, which were admitted over the objections of the plaintiffs, substantially that:

(1) Defendants as privies of M. House were estopped from denying the recital in the deed from M. House to Shela Randolph, showing the purpose of the deed.

(2) Because there being no covenant of seisin in the deed from House to Baker, and the warranty being restricted to a special warranty, the after-acquired title of House by virtue of the settlement would not enure to the benefit of the defendants.

(3) That if any title passed to House by virtue of the settlement, it was an equitable title, with which the defendants did not connect themselves.

(4) It was not shown that the defendants relied on the settlement.

(5) Mrs. Randolph being a married woman, could not be estopped without fraud on her part, which was not shown.

(6) That the settlement was in conflict with article 548, Revised Statutes, and statutes regulating conveyances by married women.

We do not think there was any error in the admission of the evidence. The defendants were not bound by the recital in the deed from House to his daughter, that the land was her distributive share of his real estate. Evidence was admissible to show what the transaction really was. Howard v. Davis, 6 Texas, 174; Hicks v. Morris, 57 Texas, 661.

Mrs. Randolph owned an equitable interest in the land, and her father held the legal title for the benefit of himself and the heirs of his wife, subject to the community obligations. In such cases it has been uni-

formly held in this State, that without administration the survivor may sell the real estate belonging to the community estate for the purpose of discharging the debts against the community. But if the survivor sells the community property without authority, the heirs of the deceased parent would be entitled to recover one-half, less the value of such property as they had received from such surviving parent. Taken in connection with the evidence that the conveyance by Mumford House to Mrs. Randolph was in settlement of her interest in the community estate of her mother in the De Witt County land, such conveyance was in discharge of House's obligation to the community incurred by the sale of the land.

The conveyance to Mrs. Randolph would be prima facie in discharge of such obligation. Sparks v. Spence, 40 Texas, 694; Belcher v. Fox, 60 Texas, 527; Burleson v. Burleson, 28 Texas, 418.

Although the defendants took the conveyance of land with constructive notice of the plaintiff's equitable interest as an heir of Mrs. House, still she will not be permitted to retain the proceeds of the settlement for that interest and recover the same of the defendant without restoration of such proceeds, notwithstanding the fact that it may not have been conveyed in the manner prescribed by the statute in which a married woman should convey her property. Our decisions on the subject are all to the effect, that whenever the heirs of the deceased partner of the marital partnership have received property amounting to their share of the property belonging to the community estate, their equitable title to the remainder stands discharged. We do not think it is a question of estoppel, in which it would be necessary to show fraud on the part of Mrs. Randolph in order to invoke the principle, but it is rather a settlement by the trustee of the legal title with the cestui que trust for her equitable interest therein.

Although the vendee, Baker, took the legal title of House, charged with the equitable interest of Mrs. Randolph, the settlement with Mrs. Randolph discharged the land of this equity, and it enured to the benefit of House's vendees. If the doctrine of after-acquired title should be held to be involved, that is now settled in this State against the contention of appellants. Lindsay v. Freeman, 83 Texas, 263. The deed of House to Baker, and the subsequent conveyance by him to appellees' vendor, was sufficient to connect them with whatever equity House may have acquired.

The one-twenty-fourth interest claimed by Mrs. Randolph as the heir of her brother Travis, would attach to the property received by him in the settlement with his father, and not to the land in controversy.

We are of the opinion that there was no error in the record, and the judgment of the court below will be affirmed.

*Affirmed.*

Delivered December 1, 1892.

Justice PLEASANTS did not sit in this case.